836 F.2d 1347
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lettie BOWLING, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 86-3451.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1988.
 
 Before CORNELIA G. KENNEDY, MILBURN, and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner, Lettie Bowling, appeals a decision of the Benefits Review Board ("the Board") affirming a decision by the Administrative Law Judge ("the A.L.J.") denying her application for benefits as a surviving dependent under the Black Lung Benefits Act of 1969, as amended, 30 U.S.C. Secs. 901-945. The Act provides for payment of benefits "in respect of the death of any miner whose death was due to pneumoconiosis or ... who at the time of his death was totally disabled by pneumoconiosis." 30 Id. Sec. 921(a). For the reasons that follow, we affirm.
 
 
 2
 Arnold Bowling was born on April 11, 1907, and applied for benefits on July 21, 1978. He died on December 1, 1978, and petitioner filed an application for widows' benefits on January 16, 1979. The Office of Workers' Compensation Programs, Department of Labor, denied the claim initially. On March 29, 1983, a hearing was held before the A.L.J., at which the following evidence was presented.
 
 
 3
 Petitioner testified that her husband had worked as a coal miner for ten to twelve years prior to their marriage in 1937, and that he continued to work in the coal mines until 1940 or 1941. Numerous statements prepared by Bowling's co-workers indicated that he worked as a coal miner from 1923 to 1939. Petitioner further testified that her husband was rendered totally disabled prior to his death by a lung impairment, and that he "couldn't walk no further than 30 feet and he would have to stop and he'd cough and cough, and spit up bad stuff."
 
 
 4
 According to a discharge summary prepared by Dr. Eugene Bowling, Arnold Bowling was hospitalized on November 21, 1978, with an initial diagnosis of "carcinoma of the lung vs. TB." Dr. Bowling observed that petitioner's husband "had rales and dullness over the right chest," but that "[t]he left chest seemed essentially clear"; that he had been a smoker for more than fifty years; that he had a chest x-ray "that looked very suspicious of malignancy on the right"; and that in an earlier office visit he was found to have a positive tuberculin skin test. Further, Dr. Bowling noted that petitioner's husband had been admitted for bronchoscopy to confirm a diagnosis of malignancy; that the procedure was delayed until TB test results had been obtained; that "no TB organisms" or "malignant cells" were identified by "the studies that were sent to Lexington"; that by the time the results were received the miner was not judged able to tolerate bronchoscopy; and that he "seemed to gradually deteriorate and expired."
 
 
 5
 Dr. Bowling made no comment with respect to whether the X-ray exhibited the presence or absence of pneumoconiosis. The X-ray was read by Dr. W.F. Clarke, who interpreted it as positive for pneumoconiosis. It was subsequently re-read at the request of the director by Dr. W.S. Cole, a "B" reader and board certified radiologist, who interpreted it as negative for pneumoconiosis. The death certificate, signed by Dr. Bowling, listed the cause of death as pneumonia due to, or as a consequence of, carcinoma of lung by X-ray, and mentioned cerebral vascular disease as a significant condition.
 
 
 6
 The A.L.J. found that petitioner's husband had worked as a coal miner for at least ten years between 1923 and 1939. Further, the A.L.J. found that petitioner had not presented sufficient evidence to invoke the interim presumption of disability pursuant to 20 C.F.R. Secs. 727.203(a)(1) or (4), and that petitioner was not entitled to benefits under 20 C.F.R. Sec. 410.414. Finally, the A.L.J. found that Dr. Bowling's "qualified" diagnosis of lung cancer did not establish that petitioner's husband suffered from a totally disabling chronic respiratory impairment for the purposes of 20 C.F.R. Sec. 410.462(a).
 
 
 7
 The Benefits Review Board affirmed the A.L.J.'s decision, finding that petitioner failed to allege any specific errors by the A.L.J., and this appeal ensued.
 
 II.
 A. Exhaustion of Administrative Remedies
 
 8
 Relying upon our decision in Cox v. Benefits Review Board, 791 F.2d 445 (6th Cir.1986), the director argues that petitioner's "failure to present any arguments to the Benefits Review Board deprives this court of authority to review the Board's decision." Petitioner's "Petition for Review and Briefs," which was filed with the Board by a lay representative, urged that the A.L.J. "erred [in] his finding that the miner did not have a totally disabling respiratory or pulmonary impairment for the purposes of the subsection (a)(4) presumption." The Board declined to examine the A.L.J.'s findings and conclusions, finding that petitioner "fail[ed] to allege any specific errors by the administrative law judge."
 
 
 9
 The director's reliance upon Cox is misplaced. In Cox, we held that the "Petition for Review" was inadequate to invoke the Board's review of the A.L.J.'s decision because it alleged that the interim presumption had been invoked pursuant to at least one of the four methods found at 20 C.F.R. Sec. 727.203(a), without identifying specifically which method supported invocation. 791 F.2d at 446-47. We reasoned that 20 C.F.R. Sec. 802.210(a), which provides that "[a] petition for review shall contain a statement indicating the specific contentions of the petitioner and describing with particularity the substantial questions of law or fact to be raised by the appeal," requires "that a party challenging an ALJ's decision must do more than recite evidence favorable to his case, but must demonstrate with some degree of specificity the manner in which substantial evidence precludes the denial of benefits or why the ALJ's decision is contrary to law." 791 F.2d at 446.
 
 
 10
 However, section 802.210(a) is not applicable in the present case because petitioner was not represented by counsel before the Board. 20 C.F.R. Sec. 802.219 provides that, "[i]f a party to an appeal is not represented by an attorney, the Board may prescribe an informal procedure in such case to be followed by such party." A petitioner proceeding before the Board who is not represented by an attorney is entitled to substantial evidence review of the A.L.J.'s decision even if the petition for review does not raise specific allegations of error. See Horton v. Director, Office of Workers' Compensation Programs, 7 Black Lung Rep. 1-446, 1-447 (1984). Thus, petitioner's "Petition for Review and Briefs" was adequate to invoke the Board's review of the A.L.J.'s decision.
 
 B. Invocation of the Interim Presumption
 
 11
 Petitioner argues that the A.L.J. erred in finding that the interim presumption had not been invoked pursuant to 20 C.F.R. Secs. 727.203(a)(1) or (4). We must affirm the A.L.J.'s decision if it is supported by substantial evidence and is in accordance with applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).
 
 
 12
 20 C.F.R. Sec. 727.203(a)(1) provides that "[a] miner who engaged in coal mine employment for at least 10 years ... will be presumed [to have died] due to pneumoconiosis, arising out of that employment, if ... [a] chest roentgenogram (X-ray) ... establishes the existence of pneumoconiosis." The A.L.J. found that the X-ray evidence did not establish the existence of pneumoconiosis because the negative interpretation of the single X-ray by Dr. Cole, who was a "B" reader and board certified radiologist, was entitled to greater weight than the previous positive reading by Dr. Clarke, who was not so qualified. Petitioner contends that Dr. Clarke's positive reading was sufficient to trigger the interim presumption, and that the presumption could not be rebutted by the subsequent negative reading of the same X-ray.
 
 
 13
 Petitioner's argument is not well-taken, under the circumstances of this case. It is true that we have held that, where an X-ray has been read positive for pneumoconiosis by a "Certified Black Lung X-ray Reader," the re-reading as negative, by another qualified reader, will not constitute substantial evidence to rebut the positive reading. Dickson v. Califano, 590 F.2d 616, 623 (6th Cir.1978). And, in Moore v. Califano, 633 F.2d 727, 731 (6th Cir.1980), we pointed out that the language of 30 U.S.C. Sec. 923(b) specifically rules out reliance upon a negative re-reading of an X-ray which was previously read as positive for pneumoconiosis by a board certified, or board eligible, radiologist.
 
 
 14
 However, in this case, the physician who interpreted the miner's X-ray as positive was not board certified in radiology, or classified by the Department of Health and Human Services as a proficient reader of X-ray evidence of pneumoconiosis; instead, it was a reader who possessed those qualifications who subsequently read the X-ray as negative for pneumoconiosis. Although the Fourth Circuit, in Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986), appears to have adopted the position that a single positive reading of an X-ray invokes the presumption, Stapleton has been rejected by this court. See Back v. Director, Office of Workers' Compensation Programs, 796 F.2d 169, 172 (6th Cir.1986). In Back, there were conflicting readings of three X-rays, and the court found that the Secretary was entitled to deny benefits in reliance upon a "B" reader's negative interpretation of the last X-ray in the series, even though that X-ray had been previously read as positive by a physician who was neither board certified nor a classified reader. In no opinion that we can find has this court prohibited the Secretary from relying upon the interpretation of a classified reader or board certified radiologist who has re-read an X-ray which was previously interpreted as positive for pneumoconiosis by a physician who does not possess those qualifications. See, e.g., Gibson v. Secretary of Health & Human Services, No. 84-5756 (6th Cir. July 26, 1985) (per curiam). That is not surprising, since permitting re-reading under those circumstances is consistent with the previously mentioned language found in 30 U.S.C. Sec. 923(b).
 
 
 15
 Moreover, the Supreme Court, in a recent opinion issued after oral argument in this appeal, reversed Stapleton v. Westmoreland Coal Co., and held that a claimant who wishes to invoke the interim presumption through X-ray evidence must demonstrate, by a preponderance of the evidence, that a chest X-ray establishes the presence of pneumoconiosis. Mullins Coal Company Inc. of Virginia v. Director, Office of Workers' Compensation, --U.S. ----, 56 L.W. 4037 (1987).
 
 
 16
 Accordingly, the A.L.J.'s conclusion, that the X-ray evidence was insufficient to invoke the interim presumption of U.S.C. Sec. 727.203(a)(1), is supported by substantial evidence.
 
 
 17
 20 C.F.R. Sec. 727.203(a)(4) provides that "[a] miner who engaged in coal mine employment for at least 10 years ... will be presumed [to have died] due to pneumoconiosis, arising out of that employment, if ... [o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." The A.L.J. found Dr. Bowling's discharge summary insufficient to invoke the interim presumption under section 727.203(a)(4) because Dr. Bowling did not state that petitioner was totally disabled due to a respiratory or pulmonary impairment.
 
 
 18
 We have held that a physician's report diagnosing a respiratory or pulmonary impairment is not sufficient to invoke the interim presumption under section 727.203(a)(4), absent a finding of total impairment. Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254-55 (6th Cir.1983). Dr. Bowling made no comment with respect to the disabling effect of petitioner's husband's respiratory impairment, stating only that he had been an invalid since suffering a stroke. Thus, the A.L.J.'s finding that Dr. Bowling's report was not sufficient to invoke the interim presumption is supported by substantial evidence.
 
 C. Invocation of the Statutory Presumption
 
 19
 Petitioner argues that she is entitled to a presumption that her husband's death was due to pneumoconiosis under 30 U.S.C. Sec. 921(c)(2), which provides that, "[i]f a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis." 20 C.F.R. Sec. 410.462 is the implementing regulation for 30 U.S.C. Sec. 921(c)(2) and sets out the requirements for invoking the presumption. 20 C.F.R. Sec. 410.462(a) reiterates the language of the statute, providing that, if the "deceased miner was employed for 10 years or more in the Nation's coal mines and died from a respirable disease, it will be presumed, in the absence of evidence to the contrary, that his death was due to pneumoconiosis." 20 C.F.R. Sec. 410.462(b) describes what is meant by a respirable disease, explaining that "[d]eath will be found due to a respirable disease when death is medically asceribed to a chronic dust disease, or to another chronic disease of the lung." The A.L.J. found that Dr. Bowling's diagnosis of cancer was "a qualified one" and did not suggest "a reasonable possibility that the miner's death was ascribed to a ... chronic disease of the lung." 7
 
 
 20
 The A.L.J.'s finding that the death of petitioner's husband was not "ascribed" to a chronic disease of the lung is supported by substantial evidence. Relying upon the negative reports concerning cell cultures, the A.L.J. concluded that any diagnosis of lung cancer was too speculative to credit. An unreliable medical ascription of cause of death is analogous to the situation of an indeterminate ascription. Smakula v. Weinberger, 572 F.2d 127, 132-33 (3d Cir.1978).[1] Even had there been a credible diagnosis of lung cancer, that disease is not a "chronic disease of the lung" under the regulation, as a matter of law. Death will be found due to a respirable disease when it is medically ascribed to lung cancer only where the claimant establishes that the miner's lung cancer constituted a chronic lung disease and where the disease suggests a reasonable possibility that death was due to pneumoconiosis. Tackett v. Benefits Review Board, 806 F.2d 640 (6th Cir.1986).
 
 
 21
 The decision of the Board is affirmed.
 
 
 
 [1]
 While petitioner argues that tuberculosis is a respirable disease, there is no evidence in the record that petitioner's husband died from tuberculosis